**UNITED STATE of America,**

v.

**Christopher SHAW, Defendant.**

**No. CR 02–1147(ADS).**

United States District Court,
E.D. New York.

May 10, 2003.

Roslynn R. Mauskopf, United States Attorney Eastern District of New York, Central by Timothy S. Driscoll, Assistant United States Attorney, Islip, NY, for Plaintiff.

Kase & Druker by John Laurence Kase, Esq., Garden City, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves a felon-in-possession. Presently before the Court is a motion by Christopher Shaw ("Shaw" or the "defendant") to suppress a gun that is the subject of the indictment in this case or, in the alternative, to dismiss the indictment.

## I. BACKGROUND

In 1997, the defendant was sentenced to 2–6 years incarceration after being convicted in the state court for Burglary in the Third Degree. On September 23, 1999, the defendant was released on parole. Prior to his release, Shaw signed a "certificate of release," dated August 4, 1999, which listed the terms and conditions of his release. The certificate listed as conditions, among other things, that "(4) I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property ... (9) I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer...."

In October of 2000, while Shaw was on parole, Detective Christopher Nealis of the Suffolk County Police Department received a tip regarding the defendant. The informant advised Detective Nealis that the defendant, who had been providing information about narcotics activities to the detective, was himself distributing crack cocaine in Coram. The informant also stated that the defendant was carrying a handgun while he was engaging in narcotics transactions. Furthermore, the informant described the defendant and told Detective Nealis the defendant's street name The Government contends that, based on his prior dealings with Shaw, Detective Nealis recognized that the informant was referring to Shaw and that the street name was Shaw's street name.

Thereafter, Detective Nealis notified Officer Kann of the New York State Division of Parole of this information. Based on

the information relayed to him, Parole Officer Kann requested the assistance of Suffolk County detectives in a visit to the defendant's residence.

On October 12, 2000 at approximately 10:00 a.m., Parole Officer Kann, Detective Nealis, and three other Suffolk County Police detectives went to the defendant's residence. According to the Government, the officer and the detectives knocked on the door to the defendant's apartment, which was located in the basement of the premises. The Government further claims that the defendant let the parole officer and the detectives into his residence.

The Government contends that the parole officer and the detectives observed the defendant and two others present in the living room. Upon seeing the detectives, one of the individuals attempted to shove a plastic bag in his pants. That plastic bag was recovered and was found to contain narcotics.

Detective Nealis then walked into the laundry room adjacent to the living room. The Government contends that the laundry room, which is across the hall from the main entrance to the defendant's apartment, was unlocked and the defendant had full access to this room. The Government claims that on an exposed beam in the laundry room, Detective Nealis saw and seized a loaded .32 caliber Davis Industries handgun. The Government claims that the defendant voluntarily told Detective Nealis that the handgun was his.

Having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, the defendant was indicted in this Court on one count of violating 18 U.S.C. § 922(g)(1) for possessing a Davis .32 caliber semi-automatic pistol. The defendant moves to suppress the weapon or that the Court should hold a hearing on the issue of suppression. In the alternative, the defendant moves to dismiss the indictment.

## A. Motion to Dismiss the Indictment

 The defendant requests that the Court dismiss the indictment on the ground that this prosecution is an improvident exercise of federal jurisdiction because the weapon was inoperable and thus could not serve as the basis for a New York state prosecution. The defendant is correct in stating that under New York law a weapon must be operable to establish criminal possession of a handgun. *See People v. Longshore*, 86 N.Y.2d 851, 852, 633 N.Y.S.2d 475, 657 N.E.2d 496, 497 (1995) (holding that "to establish a violation of Penal Law § 265.01(4), the People must establish that the defendant possessed an operable rifle or shotgun after having previously been convicted of a felony"). However, the defendant fails to cite to any authority establishing that the inoperability of a firearm precludes federal prosecution of the defendant pursuant to Section 922(g)(1).

Section 922(g)(1) prohibits a convicted felon from possessing a firearm and provides as follows:

> **(g) It shall be unlawful for any person -**
>
> **(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;**
>
> **to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.**

18 U.S.C. § 922(g)(1). Although the Second Circuit has apparently not yet decided this issue, every circuit which has addressed this issue has concluded that based on the language of the statute the Government need not show that a firearm is operable for purposes of § 922(g)(1).

*United States v. Adams,* 137 F.3d 1298, 1300 (11th Cir.1998) ("[T]he government was not required to show that the firearm was operable for purposes of § 922(g)(1)"); *United States v. Maddix,* 96 F.3d 311, 316 (8th Cir.1996) ("The law is clear that a weapon does not need to be operable to be a firearm."); *United States v. Morris,* 904 F.2d 518, 519 (9th Cir.1990) ("The statute imposes no requirement that the gun be loaded or operable.") (quoting *United States v. Gonzalez,* 800 F.2d 895, 899 (9th Cir.1986)); *United States v. Perez,* 897 F.2d 751, 754 (5th Cir.1990) ("An inoperable firearm is nonetheless a firearm."). Notably, the defendant's papers are devoid of any authority stating to the contrary. Accordingly, the defendant's motion to dismiss the indictment on the ground of an inoperable handgun is denied.

### B. Motion to Suppress the Gun

■ The defendant also moves to suppress the gun, or that the Court grant a hearing on the issue of suppression. The defendant contends that the search violated his Fourth Amendment rights and that therefore the gun should be suppressed. Shaw's assertion is not supported by an affidavit based on personal knowledge. Instead, an affidavit by the defendant's counsel is offered. Counsel for Shaw explains that after the defendant was arrested for parole violation, he was transferred outside the jurisdiction of the district. As such, counsel states that for the convenience for both counsel and his client, counsel conveyed to the Court what was told to him by his client.

■ A defendant moving for the suppression of evidence seized following a search is not automatically entitled to an evidentiary hearing. *United States v. Barrios,* 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir.2000). Rather, the defendant must show that contested issues of fact exist necessitating an evidentiary hearing. *United States v. Jailall,* No. 00 CR 069, 2000 WL 1368055, at *8 (S.D.N.Y. Sept. 20, 2000). It is well-settled that such showing must be made by an affidavit of someone with personal knowledge of the underlying facts. *United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967); *United States v. Belin, et al.,* No. 99–214, 2000 WL 679138, at *5 (S.D.N.Y. May 23, 2000); *United States v. Soto,* No. 99–1246, 2000 WL 1738663, at *1 (S.D.N.Y. Nov. 21, 2000).

Courts have made clear that attorney affidavits are insufficient to warrant a hearing. *See Gillette,* 383 F.2d at 848 (holding that an attorney's affidavit that does not allege personal knowledge of disputed facts is inadequate to justify a suppression hearing); *United States v. Roberts, et al.,* No. 01–410, 2001 WL 1602123, at *13 (S.D.N.Y. Dec. 14, 2001) (stating that attorney affidavits are insufficient to trigger a hearing and that a defendant is required to present his claim through an affidavit of an individual with personal knowledge of the relevant facts); *United States v. White,* No. 98–1159, 1999 WL 4910, at *1 (S.D.N.Y. Jan. 4, 1999) (holding that naked assertions by defendant's counsel cannot substitute for a sworn affidavit executed by defendant); *United States v. Martinez,* 634 F.Supp. 1144, 1147 (S.D.N.Y.1986) (denying the defendant's motion to suppress without a hearing where supported only by attorney's affidavit). In this case, in the absence of an affidavit based on personal knowledge, no evidence exists to dispute the facts described by the Government. Therefore, the motion to suppress the gun is denied without prejudice because there is no basis for suppressing the gun, and the defendant's motion for a suppression hearing is denied without prejudice.

## II. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion to dismiss the indictment is **DENIED;** and it is further

**ORDERED,** that the defendant's motion to suppress the gun is **DENIED** without prejudice; and it is further

**ORDERED,** that the defendant's motion for an evidentiary hearing is **DENIED** without prejudice.

**SO ORDERED.**